OPINION
On June 12, 1997, appellant, Raymond Miller, filed a complaint against appellee, Miller Miller Accountants, Inc., alleging negligence, breach of fiduciary duty and accounting malpractice relating to appellant's acquisition of a company called Refurbco, Inc. and its corporate affiliate, Unique Communications, from Gary Underhill. Both appellant and Mr. Underhill were clients of appellee. Appellant acquired the company with a partner, Robert Troyer, an accountant and employee of appellee. Appellee's employees who allegedly worked on the deal were Gary Lovett and Robert Klopfer. The deal closed in April of 1992 for $76,088.25. Following the acquisition, the company deteriorated. Appellant claimed the company's financial statements prepared by appellee were not as they appeared to be. Appellant asked Mr. Underhill to rescind the transaction. In October of 1992, Mr. Underhill agreed, in consideration of appellant paying him $100,000 and signing a covenant not to sue.
On March 31, 2000, appellee filed a motion for summary judgment based upon the covenant not to sue.[1] By entry filed May 24, 2000, the trial court found the covenant not to sue did not apply to appellant's claims against appellee, but did apply to appellant's claims against Mr. Troyer, as a business partner and as an employee of appellee.
A jury trial commenced on June 6, 2000. The trial court directed a verdict in favor of appellee on the issue of breach of fiduciary duty. The jury found in favor of appellant in the amount of $176,088, but found appellant twenty percent comparatively negligent. Following the verdict, the trial court issued a ruling on two motions filed by appellee, a motion for a directed verdict and a motion for judgment notwithstanding the verdict. By judgment entry after trial filed July 19, 2000, the trial court found appellant's counsel mislead the jury in closing argument, and ordered a new trial or a remittitur to $70,000.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ORDERING A NEW TRIAL SUA SPONTE UNDER CIV.R. 59(D) IN THE ABSENCE OF ANY JUSTIFIABLE GROUNDS UNDER CIVIL RULE 59(A).
 II THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ORDERING A NEW TRIAL SUA SPONTE UNDER CIV.R. 59(D) WITHOUT GIVING PLAINTIFF THE REQUISITE NOTICE AND HEARING.
 III THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN INSTRUCTING THE JURY ON IMPLIED ASSUMPTION OF RISK/CONTRIBUTORY NEGLIGENCE AS AN AFFIRMATIVE DEFENSE.
 IV THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GRANTING A DIRECTED VERDICT DISMISSING PLAINTIFF'S CLAIM AGAINST DEFENDANT FOR BREACH OF FIDUCIARY DUTY.
 V THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GRANTING PARTIAL SUMMARY JUDGMENT DISMISSING ANY CLAIM AGAINST DEFENDANT FOR THE ALLEGED MISCONDUCT OF ITS STAFF ACCOUNTANT WHOM PLAINTIFF HAD COVENANTED NOT TO SUE INDIVIDUALLY.
 VI THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN NOT GRANTING PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST.
Appellee also filed an appeal. Assignment of error is as follows:
 CROSS-ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED BY NOT GRANTING MILLER 
MILLER'S MOTIONS FOR A DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT AS A MATTER OF LAW BASED UPON THE PLAINTIFF'S FAILURE TO INTRODUCE EXPERT TESTIMONY AND/OR SUPPORTING EVIDENCE ESTABLISHING HIS PROFESSIONAL MALPRACTICE CLAIM.
 I
Appellant claims the trial court erred in ordering a new trial or a remittitur. We agree.
By judgment entry after trial filed July 19, 2000, the trial court found the jury's verdict was motivated by appellant's "no man can serve two masters" argument during closing:
 It was his [Mr. Underhill's] understanding in addition to representing him in the sale of the company that they were giving advice and recommendations to Mr. Miller on what this company is worth. That's from Mr. Underhill himself. It's one of the few things he did recall this morning.
 How can you do that? The Bible says you cannot serve two masters at the same time. And in this case that's exactly what was done. And because there were two masters being served at the same time, two clients whose interests were adverse, this firm had loyalty to two people. It owed a duty of loyalty to a client the same as I stand here before you representing Mr. Miller I have a duty of loyalty to represent him to the best of my ability.
 If I were to tell you folks, oh, by the way, I'm doing my best and I have the degree of loyalty and I am giving him 100 percent, but my representing his client the same way.
 Pardon me? Wait. You can't have two attorneys in the same firm representing adverse interests because it calls into question your loyalty, your integrity and your ability to impartially evaluate and give your client good advice.[2]
Vol. IV T. at 442-443.
The trial court deemed this argument improper because the issue of breach of fiduciary relationship had been precluded by a previous trial court ruling. Vol. IV T. at 277-279. We note the trial court found that the jury made an inappropriate decision based upon less than a page of recorded transcript in a trial that lasted five days and consisted of four hundred ninety-five pages of transcript. Further, we note the complained of argument was prefaced by counsel arguing appellant's claims were based upon negligence:
 What I am telling you is that negligence is not fraud and negligence is you didn't do a reasonable job in representing your client. And there is no dispute here that they were representing Raymond Miller in terms of evaluating, analyzing, giving advice and recommendations, even to the point Mr. Underhill said in the transaction he hardly talked to Raymond, everything was run through the accounting firm.
Vol. IV T. at 441-442.
Appellant's counsel's final closing also spoke in terms of negligence. Vol. IV T. at 463. The jury charge given by the trial court also centered on negligence:
 Plaintiff, Raymond Miller, claims that the defendant, Miller and Miller Accountants, Incorporated, undertook to do financial advice and accounting work for him in his acquisition of two business; Refurbco Communications and Unique Communications during 1991 and 1992. Plaintiff further claims that Miller and Miller were professionally negligent in performing the duties they agreed to perform for him in that transaction, resulting in a bad business deal and financial loss to him.
* * *
 All right. In regard to negligence, to prove an accounting negligence, Mr. Miller must prove to you by the greater weight of the evidence that an accountant at Miller and Miller, other than Robert Troyer, was negligent in performing a duty which he agreed to perform for Mr. Miller, that that negligence proximately caused an injury to Mr. Miller, and the amount of damages he suffered is the proximate result of the accountant's negligence.
* * *
 Let's talk about what is negligence? Negligence simply means failure to use ordinary care. Every person is required to use ordinary care in carrying out a duty to avoid injuring another person or another's property. Ordinary care is the care a reasonably careful person would use under the same or similar circumstances. The amount of care increases in proportion to the danger that reasonably should be foreseen. Ordinary care is a relative term. The test, though, is still ordinary care under the circumstances.
* * *
 The first question: Was the defendant Miller and Miller Accountants negligent in a way that proximately caused injury to the plaintiff Raymond Miller? If you believe they proved that they were, you circle, yes. If they failed to prove that they were, you would circle, no.
Vol. IV T. at 472, 474, 475 and 479, respectively.
The trial court also cautioned the jury "[t]he opening statements and closing arguments of the lawyers are designed to assist you, but they are not evidence." Vol. IV T. at 469.
Appellee's closing argument also centered on negligence (Vol. IV T. at 458-460), and appellee's counsel stated appellant was "grossly negligent." Vol. IV T. at 456.
The granting of a new trial lies in the trial court's sound discretion. Civ.R. 59. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217.
Based upon the foregoing clear instructions on negligence, including the use of the comparative negligence format, and the jury returning the interrogatories on negligence and comparative negligence, we find the trial court erred in ordering a new trial or remittitur based upon the simple analogy given in closing argument.
Assignment of Error I is granted.
 II
Appellant claims the trial court erred in granting a new trial without affording him notice and a hearing. Given our decision in Assignment of Error I, this assignment is moot.
 III
Appellant claims the trial court erred in instructing the jury on implied assumption of the risk/contributory negligence. We disagree.
The trial court gave each party the opportunity to object to the jury charge. Appellant's counsel objected as follows:
 To that extent Mr. Witkowski and his affirmative defense raised both, but I don't think assumption of risk, I think I have trouble with his arguing that Mr. Miller was assuming a risk and, therefore, was negligent.
 I don't believe that the charge should have an assumption of the risk charge in there where it speaks of assuming the risk.
Vol. IV T. at 423.
The trial court and counsel then engaged in a discussion regarding assumption of the risk doctrine and its merger into comparative negligence:
 THE COURT: Again, as I understand, assumption of the risk is merged into a comparative negligence case. So whether it's called assumption of the risk or comparative negligence it's still compared to the defendant's negligence for purposes of resolving the case. So I'll try to make sure that I make clear to you when we're talking about comparative negligence in the interrogatories we're talking about comparative negligence or assumption of the risks.
 MR. BERTSCH: That's what I'm objecting to. I don't think assumption of the risk — I don't have a problem with Mr. Witkowski arguing it — I don't think it should be in the charge as a principle. I don't think it has application to case.
 THE COURT: I don't understand that it ceases to exist in this context. It is treated like comparative negligence. It's not as it was under the old law.
 MR. BERTSCH: I think it has a different name. I think assumption of the risk is expressed or implied.
Vol. IV T. at 423-424.
Civ.R. 51 governs instructions to the jury. Said rule states in pertinent part "[o]n appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." No objections were made at the close of the charge or to the charges agreed to by the parties.
From the discussion reproduced supra, we do not find that appellant has preserved the objection to the comparative negligence charge. In fact, the trial court modified the instructions to conform to the issue of implied or express assumption of the risk as was argued by appellant:
 Miller and Miller claim that the plaintiff, Raymond Miller, was negligent and/or impliedly assumed the risk of his own financial injury. The plaintiff was negligent if he failed to use that care, which a reasonably careful person in his circumstances would use in the same or similar circumstances.
 Raymond Miller claims he was injured by relying on the negligent representations of Mr. Klopfer and Mr. Lovett. Where a person has the opportunity to investigate and when circumstances would cause a person of ordinary care to investigate and he fails to do so, his failure to investigate is negligence.
 The plaintiff impliedly assumed the risk of his damages if he had knowledge of a condition, but voluntarily exposed himself to that risk. A plaintiff's conduct may be both negligence and implied assumption of the risk in some circumstances, and in other circumstances, the conduct may be one or the other, but not both; it depends on the facts as you find by the greater weight of the evidence. If you find from the greater weight of the evidence that he was negligent and/or impliedly assumed the risk of his damages, you must consider your written questions I will discuss with you in a little bit.
Vol. IV T. at 476-477.
Assignment of Error III is denied.
 IV
Appellant claims the trial court erred in directing the verdict on breach of fiduciary duty. We disagree.
Appellant conceded at oral argument that if Assignment of Error I was granted and the issue of comparative negligence was not granted, he would waive this argument. Further, in order to establish that there was a fiduciary duty owed to appellant, we find some testimony is necessary to establish such a duty. There was no expert testimony on the issue of fiduciary duty owed and therefore, the trial court was correct in so directing the verdict.
Assignment of Error IV is denied.
 V
Appellant claims the trial court erred in granting partial summary judgment. We disagree.
Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule has recently been reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447,448:
 Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274.
As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35.
The trial court based the granting of partial summary judgment as to the claims arising out of any actions of Mr. Troyer because appellant had expressly covenanted not to sue him. The covenant not sue specifically released Mr. Troyer from any claims related to the transaction and subsequent operations:
 In consideration of the terms, conditions and agreements to be performed as contained in a certain agreement between the parties dated October 19, 1992, the undersigned Raymond Miller, Gary Underhill, Robert Troyer, Refurbco Communications, Inc. and Unique Communications, Inc. do hereby jointly and severally, promise, covenant and agree that none of them, nor any one claiming through them, will bring, commence, prosecute or maintain any suit or action in any court against any of them on account of, arising out of, or in any way connected with the sale of stock of Refurbco Communications, Inc., and that none of them will enforce, prosecute or recover upon, any claim or right of action whatsoever which any of them may have in any way connected with the said transaction, and the subsequent operations of Refurbco, Inc. and Unique, Inc.
 See, Agreement attached to Appellee's Motion for Summary Judgment as Exhibit B.
By virtue of the two-issue rule, a decision which is supported by one or more alternate grounds properly submitted is invulnerable to attack on one issue only:
 `This rule as generally applied is that, where there are two causes of action, or two defense, thereby raising separate and distinct issues, and a general verdict has been returned, and the mental processes of the jury have not been tested by special interrogatories to indicate which of the issues was resolved in favor of the successful party, it will be presumed that all issues were so determined; and that, where a single determinative issue has been tried free from error, error in presenting another issue will be disregarded.'
 Hampel v. Food Ingredients Specialties, Inc. (2000), 89 Ohio St.3d 169, 185, quoting H.E. Culbertson Co. v. Warden (1931), 123 Ohio St. 297, 303.
We have granted Assignment of Error I and the jury verdict was for the entire amount of damages claimed by appellant minus his own comparative negligence. Therefore, the partial summary judgment on the issue of Mr. Troyer's conduct is moot.
Assignment of Error V is denied.
 VI
Appellant claims he is entitled to prejudgment interest. Given the state of the record and the granting of a new trial or remittitur with the subsequent appeal, we find this issue is not ripe for review.
 CROSS-ASSIGNMENT OF ERROR I
Appellee claims the trial court erred in not directing the verdict or in not granting a judgment notwithstanding the verdict based upon appellee's failure to introduce expert testimony or other supporting evidence to establish accounting malpractice. We disagree.
Appellee argues this case involved an accounting malpractice claim that necessitated the establishment in the record by an expert as to what appellee did to breach the standard of care. In support of this argument, appellee relies on the long established line of cases in Ohio requiring expert testimony as to the standard of care in medical malpractice claims:
 It is well settled in Ohio that in order to prevail in a medical malpractice claim, a plaintiff must demonstrate through expert testimony that, among other things, the treatment provided did not meet the prevailing standard of care.
 Ramage v. Central Ohio Emergency Services, Inc. (1992), 64 Ohio St.3d 97, 102.
 Proof of the recognized standards must necessarily be provided through expert testimony. This expert must be qualified to express an opinion concerning the specific standard of care that prevails in the medical community in which the alleged malpractice took place, according to the body of law that has developed in this area of evidence.
 Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, 131-132.
Appellee argues the only exceptions are where the issues regarding standard of care, breach of standard of care and causation are clearly within the realm of a lay person's knowledge. Appellee argues this can rarely be the case in an accounting malpractice case. See, Goldwasser 
Arnold, Accountants' Liability, Practicing Law Institute (1996) 4-39.
In its judgment entry after trial filed July 19, 2000, the trial court specifically found "there were some negligent claims which could go to the jury without expert testimony." The trial court limited the issue of negligence to whether "an accountant at Miller and Miller, other than Robert Troyer, was negligent in performing a duty which he agreed to perform" for appellant and "that negligence proximately caused an injury" to appellant. Vol. IV T. at 474. Appellant had argued with the trial court's analysis that appellee was "negligent in not determining that those numbers were not good * * * [b]efore making the recommendation to him." Vol. IV T. at 427-428.
The crux of appellant's argument is that appellee induced him to purchase the company by assuring him the "numbers were good" and that appellee could vouch for the numbers. Vol. IV T. at 427.
Admittedly, the numbers were not good and as described by appellee's counsel in opening statement "the bottom line is this is a tough business * * * problems with customers, problems with employees, problems with inventory, but the bottom line is this is a scrap business. You're buying a bunch of junkie phones in mass * * * so the fact is it's all scrap in that inventory." Vol. I T. at 77-78.
In truth, the problem between the parties revolved around the inventory, accounts receivable and accounts payable reported by appellee to appellant. The essential issue therefore was whether there were misrepresentations made by appellee to appellant and did appellant rely on these representations.
A partner of appellee, Mr. Klopfer, testified. It was his expert opinion that if he was advising a client about to purchase a business, he would suggest "the previous three years financial statements and tax returns * * * an audit of the inventory * * * a physical count, that would be appraising * * * [t]he whole spectrum." Vol. I T. at 91-92. Mr. Klopfer would also suggest visiting the company, observing the facility and the work force and pricing the inventory vis a vis book value. Vol. I T. at 91, 92-96.
Clearly, this was an expert's opinion of what an accounting firm should advise and do to help a client in purchasing a business. Therefore, there was in fact some expert testimony as to what the standard of care was for general accounting practice.
Despite the arguments of trial counsel and the trial court's acquiescence to it, we find there was some expert testimony as to general accounting practice sub judice. The jury therefore was given a guide by which to measure and judge the activities of appellee.
The second prong of this cross-assignment of error challenges the sufficiency of the evidence. Appellee claims there was insufficient evidence to support the claim that it negligently failed to perform agreed upon professional services and such failure caused appellant damages.
A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court.Myers v. Garson (1993), 66 Ohio St.3d 610.
Mr. Troyer became appellant's partner in the purchase of the company during his employment as an accountant with appellee. Vol. II T. at 366. Mr. Troyer worked for appellant on behalf of appellee. Vol. II T. at 368-370. Mr. Troyer personally advised appellant on the purchases of businesses and had suggested the purchase of Refurbco. Vol. II T. at 372, 376. Twice appellant declined to purchase the company after discussing the idea with Mr. Troyer and visiting the company. Vol. II, p. 376, 379, 381-382. Mr. Troyer evaluated the company's prospectus only once, in September of 1991 prior to suggesting the purchase. Vol. II T. at 419. Despite the fact that appellant's attorney advised appellant and Mr. Troyer to get a certified balance sheet and statement of income, Mr. Troyer thought there was no reason to verify Mr. Underhill's numbers because the firm was working with them. Vol. II T. at 423-425, 435-436; Plaintiff's Exhibit 15. Appellant testified he discussed the acquisition of the company with Mr. Underhill through Mr. Lovett, and he relied on appellee's assurances. Vol. III T. at 145, 151-157. During the time of Mr. Troyer's employment, both Mr. Klopfer and Mr. Lovett reviewed and oversaw Mr. Troyer's work as an accountant. Vol. I T. at 368.
Mr. Klopfer testified as cited supra as to what an accounting firm should recommend in advising a client interested in purchasing a business. Although Mr. Klopfer never personally worked for appellant, he did do some work for Mr. Underhill. Vol. I T. at 105, 169. Mr. Klopfer freely admitted the numbers reported by Mr. Underhill regarding the company were never tested and "[w]e didn't do due diligence on it." Vol. I T. at 99. Mr. Klopfer did not know if the numbers were accurate. Vol. I T. at 100. Nevertheless, Mr. Klopfer testified he told appellant via Mr. Troyer that the purchase price was fair and "anytime you can purchase at book value you're getting a pretty good deal." Vol. I T. at 85-86, 87-88; Vol. II T. at 404. Mr. Klopfer believed the firm represented appellant until Mr. Troyer became his partner (April 1992). Vol. I T. at 113. Appellee billed appellant for services up to the meeting that finalized the sale (March 1992). Vol. I T. at 129, 133, 166-167, 395; Plaintiff's Exhibit 13. It was Mr. Klopfer's opinion that Mr. Lovett, a partner in the firm, represented Mr. Underhill at the sale. Vol. I T. at 132, 177.
Mr. Lovett also testified and admitted that appellee charged both appellant and Mr. Underhill for the sale. Vol. I T. at 166-167. Mr. Lovett testified he was the partner personally involved with the company. Vol. I T at 168-169. Mr. Lovett told Mr. Underhill to "recheck his mathematics" on the cash flow projections, and was aware that the company was behind in its payments to appellee for accounting services. Vol. I T. at 186-188; Plaintiff's Exhibit 201. Mr. Lovett prepared the "report on compilation of financial statements" for the company. Vol. I T. at 193-194. Mr. Underhill testified that Mr. Lovett reviewed the proforma supplied to appellant, and Mr. Lovett acknowledged in a note the age of the inventory. Vol. IV T. at 344, 357.
Despite appellee's position that Mr. Lovett advised appellant to stop the sale if he was worried about the numbers, it was not until March of 1992 that appellee stopped billing appellant. Vol. II T. at 438.[3]
Up to that time line when Mr. Troyer became partners with appellant in April of 1992, appellee represented appellant. Vol. III T. 17, 19-20.
After hours of testimony, there is nothing in the record to suggest that Mr. Lovett and Mr. Troyer (when working on behalf of appellee) followed any of the requirements enumerated by Mr. Klopfer that should be done when representing as an accountant a potential purchaser of a business.
We find there was sufficient credible evidence in the record to support the jury's verdict.
Cross-Assignment of Error I is denied.
JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Richland County, Ohio is affirmed in part and reversed in part. The jury's verdict is hereby reinstated. Costs to appellee.
Hon. William B. Hoffman, P.J. Hon. Sheila G. Farmer, J. and Hon. John F. Boggins, J. concur.
[1] Between the filing of the complaint in 1997 and this motion in 2000, the case proceeded to trial wherein the trial court dismissed appellant's complaint. This court reversed and remanded the matter back to the trial court. See, Miller v. Miller Miller Accounting, Inc. (March 6, 2000), Richland App. No. 99CA18, unreported.
[2] We note appellee made no objections to this argument.
[3] Appellant testified Mr. Lovett told him not to be afraid of the numbers and Mr. Troyer told him the company was "just making money and doing really well." Vol. II T. at 498-499.